## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP DAHLIN and MARY ARNDTSEN, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>TESLA, INC,<br>               Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs, by and through their attorneys, on behalf of themselves and all others similarly situated, based upon personal knowledge with respect to their own circumstances and based upon information and belief or the investigation of their counsel as to all other allegations, allege the following:

### INTRODUCTION

1.     Defendant, Tesla, Inc. ("Defendant" or "Tesla"), has entered into contracts with Plaintiffs and the putative class, as defined below, for the installation of solar roof energy systems.

2.     Tesla advertises, markets, and otherwise represents that its solar roof energy systems are unique and superior to alternative products on the market.

3.     Notwithstanding that the contracts are enforceable against Tesla, Defendant is refusing to perform as promised and agreed, and is instead unilaterally demanding massive price increases as a condition of performance.

4.     Defendant's conduct violates Pennsylvania law.

5.      The purported arbitration clause in the Defendant's form contract utilized with Plaintiffs and the Class is void under Pennsylvania law.

**PARTIES**

6.      Plaintiffs, Philip Dahlin and Mary Arndtsen, are adult individuals, husband and wife, and citizens of the Commonwealth of Pennsylvania who at all times relevant have resided in New Hope, PA.

7.      Defendant, Tesla, Inc., is a Delaware corporation with its headquarters and principal place of business located at 3500 Deer Creek Road, Palo Alto, CA.

8.      At all relevant times, Defendant acted through its authorized employees and agents in marketing, selling and installing solar roof and energy storage systems.

**JURISDICTION AND VENUE**

9.       This Court has original diversity jurisdiction, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because Plaintiffs and the proposed Class are citizens of states different from Defendant's home state, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members in the proposed Class.

10.      This Court has personal jurisdiction over Plaintiffs because Plaintiffs are citizens and residents of Pennsylvania and submit to the Court's jurisdiction.

11.      This Court has both general and specific personal jurisdiction over Defendant because Tesla operates and conducts business throughout Pennsylvania, intentionally directs its marketing and business efforts to residents of Pennsylvania, and the matters at issue in this complaint arose directly from Defendant's activities in marketing to Plaintiffs, having its

representatives visit and inspect  Plaintiffs' home in order to prepare the Contract, and entering into the Contract in Pennsylvania.

12.     Venue is proper in this District, under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, Defendants have caused harm to Class members residing in this District, Defendants regularly conduct business in this District, and because Defendants are residents of this District under 28 U.S.C. § 1391(c)(2).

## **FACTS**

13.     Aside from its vehicle business, Tesla manufactures, markets, sells and installs traditional rooftop solar panels as well as solar roof shingles and energy storage systems.

14.     Tesla entered the solar roof business in or around 2016 when it acquired "SolarCity" which at the time was a leading rooftop solar installer in the United States.

15.     The solar shingles sold and installed by Tesla are unique in that they closely resemble ordinary roof shingles.

16.     Plaintiffs were interested in Defendant's solar shingles because of the environmentally friendly nature of the product and because Plaintiffs are prohibited by homeowners' association rules from installing  traditional solar panels on their roof.

17.     In or around 2019, after Plaintiffs contacted Tesla to explore a solar roof option, Defendant's agent or employee visited Plaintiffs' home in order to survey/measure the roof and gather information necessary to provide a price to install solar roof shingles and an energy storage system. Defendant's employee also had subsequent discussions with Plaintiffs about the design of the solar roof system.

18.     Defendant prepared a design and quoted a price in or around late 2019 for the solar roof shingles and energy system but Plaintiffs decided at that time not to proceed further with a contract.

19.     In 2020, Plaintiffs ordered and purchased a vehicle from Tesla.  When doing so, Tesla created an online account for Plaintiffs.

20.     Tesla cross-markets its solar roof systems through its website and online customer accounts. In the course of visiting Defendant's website and their online account in 2020, Plaintiffs decided to reconsider a solar roof system.

21.     Plaintiffs learned that within the last year, Tesla had launched a new and purported improved version of the solar shingles. In fact, on an October 23, 2019 earnings call, Elon Musk stated:

> [W]e will be releasing Version 3 of the Tesla Solar Roof. That's the integrated solar panels integrated with the roof. So that's -- I think this is a great product. Version 1 and 2 where we're still sort of figuring things out. Version 3, I think, is finally ready for the big time. And so we're scaling up production of the Version 3 solar tower roof at our buffalo Gigafactory. And I think this product is going to be incredible.

22.     In 2020, after further consideration and after providing the requested information online to Tesla about, *inter alia*, their energy usage and needs, Tesla provided an updated proposed contract, again with a specific price quote for the installation of the solar roof system on Plaintiffs' roof.

23.     On September 17, 2020, Plaintiff Philip Dahlin executed a Solar Roof System Contract (the "Contract") with Defendant. A true and correct copy of the Contract and Defendant's SOLAR PURCHASE DISCLOSURE is attached hereto as Exhibit A.

24.     Pursuant to the Contract, Defendant agreed to provide and install: "**an integrated roof and photovoltaic system (your "Solar Roof") and any Powerwall energy storage system (your "Powerwall", and together with your Solar Roof, your "System").**"

25.     Plaintiffs agreed to a total contract price of $46,919.20 for the System, with the sum owed of $46,084.80 after paying their $100 deposit and accounting for an energy credit.

26.     Pursuant to the Contract, Plaintiffs paid their deposit and had until midnight of the third business day after they executed the Contract to cancel the agreement.

27.     Plaintiffs did not cancel their contract and at all times were ready, willing, and able to perform their obligations.

28.     After executing the Contract, Plaintiffs refinanced their mortgage to utilize equity to pay for the work to be performed under the Contract.

29.     The Contract provided for an approximate installation start date 7-180 days from the signing of the Contract.  Thus, the outermost limit for the estimated start date of installation was March 16, 2021.

30.     After executing the contract, Plaintiffs contacted Defendant on multiple occasions to inquire how soon Tesla would install the System.

31.     On March 24, 2021, Tesla sent Plaintiffs an email stating in pertinent part the following:

> As we prepare for your Solar Roof installation, we wanted to let you know about an update to our equipment.
>
> Your Solar Roof will now feature steel tiles capable of fitting complex roof angles with no aesthetic compromise on non-solar portions of the roof. This design improvement can also help reduce installation timelines.

32.     On April 15, 2021, Defendant sent an email to Plaintiffs stating, *inter alia*: "**We have increased the price of Solar Roof and have added adjustments for individual roof complexity**."

33.     The April 15, 2021 email further stated: "**You will receive an email within the next two weeks when your new agreement is ready for your review and acceptance before moving forward**."

34.     By expressly stating that Plaintiffs needed to sign a "new agreement" before Defendant would move forward, Defendant made clear that Tesla would not perform as agreed under the Contract.

35.     On or about April 23, 2021, Defendant unilaterally increased the price to be charged to Plaintiffs for the System and advised Plaintiffs that they now owe $78,352.66 instead of the previously bargained-for and agreed-to amount of $46,084.80.

36.     As reflected in Defendant's pricing details for Plaintiffs' account, Tesla is demanding that Plaintiffs pay more than double for the Solar Roof from what was agreed-upon in the Contract.  Specifically, Defendant has increased the price of the Solar Roof from $30,139.20 to $61,255.25. Defendant has also increased the price of the Powerwall from $16,000 to $17,000.

37.     Defendant is unilaterally trying to change the terms of a fully executed Contract.

38.     Defendant has asserted improper, false and pretextual bases for breaching its contracts.

39.     Upon information and belief, as widely reported, Defendant has engaged in similar conduct throughout the country. As reported below:

# Tesla is burning its solar roof customers with a huge price increase

*From $35,000 to $75,000 for one customer*

By Andrew J. Hawkins | @andyjayhawk | Apr 12, 2021, 2:40pm EDT

## Tesla is hiking the prices on its solar roof tiles for existing customers by as much as 70%

Isobel Asher Hamilton  Apr 14, 2021, 6:43 AM                                                    (f) |

40.     Defendant is refusing to perform as agreed under its Contract with Plaintiffs and under its similar contracts with similarly situated consumers.

41.     Elon Musk, the Chief Executive Officer of Tesla, stated during an earnings call on April 26, 2021, "We did find that we basically made some significant mistakes" with respect to pricing and "what we cannot do is go and just lose a massive amount of money." Accordingly, despite its contracts, which are binding agreements to provide solar roof systems to customers at stated prices, Tesla is breaching, anticipatorily or otherwise, its agreement by imposing price increases of 2-3 times the agreed-upon prices.

## **CLASS ALLEGATIONS**

42.     Plaintiffs bring this action, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3), on behalf of the following Class for the maximum time period allowable by law:

> All persons with whom Tesla entered into a contract for the purchase and/or installation of a Solar Roof and/or Powerwall energy storage system at a residence in Pennsylvania and whom Tesla notified prior to installation would be required to pay an increased price.

7

43.     Plaintiffs reserve the right to revise the definition of the Class based upon subsequently discovered information and reserve the right to establish sub-classes where appropriate.

44.     The Class excludes Defendant and any entity in which Defendant has a controlling interest, as well as its officers, directors, legal representatives, successors, and assigns. The Class also excludes government entities and judicial officers that have any role in adjudicating this matter.

45.     The Class is so numerous that joinder of all members is impracticable. Plaintiffs believe that there are in excess of 100 Class members in the State.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

47.     Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

48.     Plaintiffs' claims are typical of the claims of the Class that Plaintiffs seek to represent. As alleged herein, Plaintiffs and Class members sustained damages arising out of the same actions and conduct of Defendant.

49.     Common questions of law and fact exist to all members of the Class and predominate over any issues solely affecting individual members of the Class. The common and predominating questions of law and fact include, but are not limited to:

•       Whether Defendant repudiated its contracts with the Class;

•       Whether Defendant refused to perform its contracts as agreed;

•       Whether the Class has been deprived of their promised performance;

•       Whether Defendant's actions violate Pennsylvania consumer protection statutes;

- Whether specific performance, damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

50.     Plaintiffs are willing and prepared to serve the Class in a representative capacity with all the obligations and material duties necessary.

51.     Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no interests adverse to or in conflict with the interests of any of the other members of the Class.

52.     Plaintiffs will vigorously prosecute this action. Plaintiffs have engaged the services of the undersigned counsel. Counsel are experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Class.

53.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

54.     The Class may also be certified under Rule 23(b)(2) because  has acted on grounds generally applicable to the Class, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Class.

55.     The interest of members within the Class in individually controlling the prosecution of separate actions is theoretical and not practical. The Class has a high degree of similarity and cohesiveness, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

56.     The nature of notice to the Class, upon certification of the Class, is by best notice practicable under the circumstances including, amongst other things, direct mail, email, and/or publication via the internet.

## COUNT I
## BREACH OF CONTRACT
## (INCLUDING THE COVENANT OF
## GOOD FAITH AND FAIR DEALING)

57.     Plaintiffs incorporate by reference all prior allegations of this complaint as if fully set forth herein.

58.     Plaintiffs bring this count on behalf of themselves and the Class.

59.     In the Commonwealth of Pennsylvania, every contract includes an implied duty of good faith and fair dealing in connection with the performance and enforcement of that contract.

60.     Plaintiffs entered into their Contract with Defendant in good faith and with the ability and willingness to perform any obligations owed.

61.     The Class members entered into substantially identical form contracts with Defendant.

62.     Under its Contract with Plaintiffs and its contracts with the members of the Class, Defendant agreed to install Solar Roof Systems for an agreed-upon price.

63.     The contract price is a material term of the subject contracts.

64.     Tesla has absolutely and unequivocally stated to the Plaintiffs and the Class that it will not perform as it had agreed under the contracts and has therefore breached its contracts.

65.     Defendant is refusing to honor its contracts under the agreed upon price with Plaintiffs and the Class and is in breach of the contracts.

66.     Defendant has repudiated its contracts with Plaintiffs and the Class.

67.     Defendant is obligated to perform as promised and agreed to in its contracts.

10

68.     Defendant's breach of the contracts has caused Plaintiffs and the Class to suffer harm.

69.     Given the unique nature of the solar roof systems supplied by Tesla, Plaintiffs and the Class are entitled to specific performance of their contracts because no remedy at law is adequate.

70.     Alternatively, if specific performance is not ordered, Plaintiffs and the Class are entitled to monetary damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, demand judgment against Tesla for specific performance of the contracts or alternatively for monetary damages in an amount to be proven at trial, together with interest and costs and all other relief deemed just and reasonable.

## <u>COUNT II</u>
### VIOLATION OF THE HOME IMPROVEMENT CONSUMER PROTECTION ACT
### 73 P.S. §517.1, et seq.

71.     Plaintiffs incorporate by reference all prior allegations of this complaint as if fully set forth herein.

72.     Plaintiffs bring this count on behalf of themselves and the Class.

73.     Defendant is a contractor as defined by the Home Improvement Consumer Protection Act, 73 PA.C.S. §517.2 ("HICPA").

74.     The solar roof energy systems sold and installed by Defendant is a Home Improvement as defined by HICPA.

75.     Plaintiffs' Contract and the solar roof energy systems contracts of Class members are Home Improvement Contracts under HICPA.

76.     The subject contracts with Plaintiffs and the Class contain arbitration clauses which are invalid in Pennsylvania pursuant to HICPA. §517.7(d) because, *inter alia*, the text of the clause

is not all capital letters, the text is not 12-point boldface type on a separate page from the rest of the contract, and the clause does not contain a separate line for each party to indicate assent.

77.    Tesla has violated HICPA §517.8(a)(1) by "mak[ing] a false or misleading statement to induce, encourage or solicit a person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify an increase in the previously agreed upon price."

78.    Tesla has violated HICPA §517.9(5) by "[a]bandoning or fail[ing] to perform, without justification, any home improvement contract or project engaged in or undertaken by a contractor."

79.    Pursuant to HICPA §517.10, any violation of HICPA is also a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, demand judgment against Tesla for monetary damages in an amount to be proven at trial, treble damages, together with interest and costs, attorneys' fees, and all other relief deemed just and reasonable.

## COUNT III
## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### 73 P.S. §201-1, et seq.

80.    Plaintiffs incorporate by reference all prior allegations of this complaint as if fully set forth herein.

81.    Plaintiffs bring this count on behalf of themselves and the Class.

82.    Section 201-2(3) of the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("UTPCPA") defines "trade" and "commerce" to mean the "advertising, offering for sale, sale or distribution of any services or any property, tangible or intangible, real, personal

or mixed, and any other article, commodity or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth."

83.    Defendant has engaged in trade and commerce in Pennsylvania by marketing, advertising and offering for sale solar roof energy systems.

84.    In the course of marketing, advertising and offering for sale solar roof energy systems, the Defendant has misrepresented the system components to be installed and its ability to install the solar roof energy systems for the prices and during the time periods for installation offered and agreed to with Plaintiffs and the Class members.

85.    Defendant is falsely representing its bases, purported justification and/or authority to unilaterally impose price increases.

86.    As set forth herein, Defendants have engaged in unfair and deceptive acts and practices in violation of the UTPCPA, sections 201-2(4) (ix) and (xxi).

87.    Defendant also has violated the UTPCPA by violating HICPA, as set forth herein.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, demand judgment against Tesla for monetary damages in an amount to be proven at trial, treble damages, together with interest and costs, attorneys' fees, and all other relief deemed just and reasonable.

                                   **LeVAN MUHIC STAPLETON LLC**

Dated: April 30, 2021

                                   By: */s/ Peter A. Muhic*             __
                                       Peter A. Muhic, Pa. ID 73501
                                       One Liberty Place
                                       1650 Market Street, Suite 3600
                                       Philadelphia, PA 19103
                                       215.561.1500
                                       pmuhic@levanmuhic.com

                                       Gary Lynch
                                       Edwin J. Kilpela, Jr
                                       **CARLSON LYNCH LLP**

1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412.322.9243
Fax: 412.231.0246
ekilpela@carlsonlynch.com
jmcgraw@carlsonlynch.com

*Counsel for Plaintiffs and the Class*